IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                         05-CR-499-BR

        Plaintiff,                                OPINION AND ORDER

v.

CURTIS LEE BEARD,

        Defendant.


**KARIN J. IMMERGUT**
United States Attorney
**RYAN M. ARCHER**
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR  97204
(503) 727-1000

        Attorneys for Plaintiff

**STEVEN T. WAX**
Federal Public Defender
**GERALD M. NEEDHAM**
Assistant Federal Public Defender
101 S.W. Main St., Suite 1700
Portland, OR  97204
(503) 326-2123

        Attorneys for Defendant

1  -    OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant Curtis Lee Beard's Motion to Suppress Physical Evidence (#23). The Court held an evidentiary hearing on August 10, 2006. At the conclusion of the hearing the Court requested the parties to submit supplemental briefs to clarify their arguments. After the supplemental briefing was completed, the Court took Defendant's Motion under advisement on September 22, 2006.

For the reasons that follow, the Court **GRANTS** Defendant's Motion.

## BACKGROUND

Defendant is charged in a one-count Indictment with being a Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). In his Motion to Suppress, Defendant seeks an order suppressing all evidence seized during the search of a vehicle he was driving. According to Defendant, police officers obtained this evidence as the result of an unlawful, warrantless search in violation of his rights under the Fourth Amendment to the United States Constitution.

## FINDINGS OF FACT

The Court has weighed and evaluated all of the evidence and finds the following facts by a preponderance of the evidence:

1.   On March 6, 2005, at approximately 2:45 a.m., Portland Police Officer Jack Blazer was en route to respond to a 911 call in Northeast Portland when he saw a black Lexus driven by Defendant traveling northbound on N.E. 15th Avenue.  Officer Blazer was behind the Lexus in a marked police car and observed it turn westbound onto N.E. Shaver Street.  By the time Officer Blazer came to the intersection of N.E. 15th Avenue and N.E. Shaver Street, he noticed the Lexus turn again, this time southbound onto N.E. 14th Avenue.  Because this area has a high incidence of night-time burglaries and other crimes, Officer Blazer became suspicious and followed the Lexus.

2.   Officer Blazer believed Defendant failed to stop at the stop sign as he was turning from N.E. 14th Avenue onto N.E. Failing Street.  At N.E. 13th Avenue and N.E. Failing Street, Officer Blazer decided to make a traffic stop and he activated the emergency lights on his patrol car, tapped his siren once or twice, and radioed for back-up.

3.   Defendant traveled approximately two blocks on N.E. 13th Avenue at 5-10 miles per hour after Officer Blazer activated the lights and while Officer Blazer intermittently hit the siren on his patrol car.  Defendant stopped the Lexus at  N.E. 13th Avenue and N.E. Mason Street.  Because the Lexus had tinted windows, Officer Blazer could not see inside the vehicle.

4.   Defendant opened the driver's door, stuck his hands out

3   -   OPINION AND ORDER

of the car, and yelled: "The windows don't roll down, don't shoot me." Officer Blazer responded he wasn't going to shoot and told Defendant to keep his hands where Officer Blazer could see them. Officer Blazer had his hand on his gun, but he never took it out of the holster.

    5. Officer Blazer told Defendant to turn off the car. Defendant complied. Officer Blazer waited for back-up to arrive and then asked Defendant for his driver's license.

    6. Defendant provided Officer Blazer with a driver's license. Officer Blazer explained to Defendant why he had stopped him and asked Defendant why he did not stop as soon as Officer Blazer turned on his emergency lights. Defendant responded that he was scared.

    7. Officer Blazer went to his patrol car, ran Defendant's driver's license and vehicle registration, found they were valid, and learned there were not any outstanding warrants against Defendant. Officer Blazer also determined Defendant was insured properly.

    8. Officer Blazer went back to Defendant's vehicle, but he did not return Defendant's driver's license to him. Officer Blazer conceded at the evidentiary hearing that Defendant was not free to go at that point. Instead of concluding the stop, Officer Blazer asked Defendant where he was going. Defendant answered he was going to a girlfriend's house. Officer Blazer

4 -   OPINION AND ORDER

also asked Defendant whether he had "anything that [he wasn't] supposed to have here? [Was he] doing anything [he was] not supposed to do?" Defendant answered "no."

    9. Officer Blazer then asked Defendant whether he could search the Lexus. Defendant, however, would not allow Officer Blazer to search the car without a search warrant. Officer Blazer informed Defendant that he was not going to get a search warrant and again asked for consent to search the car. Defendant still refused to allow Officer Blazer to search the car without a warrant.

    10. Officer Blazer told Defendant that he had seen him "do a lot of things that don't fit with somebody that's looking for their girlfriend." In response, Defendant became "more adamant and animated" and again refused to allow Officer Blazer to search the car without a warrant.

    11. Officer Blazer told Defendant to calm down and advised Defendant that he was beginning to believe Defendant had a gun "or something like that on [him]." Defendant responded he didn't have anything "on him" and Officer Blazer could "check [him]." Officer Blazer then directed Defendant to get out of the car so that he could pat him down.

    12. After Defendant got out of the car, Officer Blazer conducted a pat-down.

    13. At the same time, Officer Lewton, the back-up officer,

5 -    OPINION AND ORDER

looked into the car and saw a gun on the floor on the driver's side.  Officer Lewton, using code language, informed Officer Blazer that they should arrest Defendant.  Officer Blazer did not find anything on Defendant's person during the pat-down.

    14.  Officer Blazer handcuffed Defendant, walked Defendant to the patrol car, put Defendant in the back seat of the patrol car, and went back to look in the Lexus to determine what Officer Lewton saw.

    15.  Officer Blazer retrieved the gun from the vehicle, noticed it did not have a magazine in it, and began searching the Lexus for the magazine.  During the course of the search, Officer Blazer found the magazine and a small amount of what he suspected was crack cocaine.

    16.  Officer Blazer gave Defendant a *Miranda* warning, and Defendant indicated he understood his rights.  Officer Blazer then informed Defendant that he had found the crack cocaine. Defendant stated, "I smoke that."  Defendant declined to answer any further questions.

## DISCUSSION

Defendant contends the officers seized the handgun and crack cocaine during an unlawful, warrantless search in violation of his Fourth Amendment rights.  The government maintains Officer Blazer had reasonable suspicion to continue to question Defendant

6 -   OPINION AND ORDER

after he checked his license and registration, and the search was a lawful response to escalating suspicions.

**I.   The Law**

The Fourth Amendment provides in pertinent part:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause.

U.S. Const. amend. IV.  "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)(citations omitted).  The "reasonableness" mandated by the Fourth Amendment generally requires law-enforcement officers to obtain a warrant supported by probable cause before conducting a search.  *Payton v. N.Y.*, 445 U.S. 573, 586 (1980).

The Supreme Court has held the scope of a traffic stop must be carefully tailored to the reasons supporting the stop. *Florida v. Royer*, 460 U.S. 491, 500 (1983)("The scope of the detention must be carefully tailored to its underlying justification.").  The stop must be "temporary and last no longer than is necessary to effectuate the purpose of the stop" and should employ "the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time."  *Id*.  After the reason for the stop is resolved, the legitimate investigative purpose of the traffic stop is

completed.  *Id*.  "An officer must initially restrict the questions he asks during a stop to those that are reasonably related to the justification for the stop."  *United States v. Chavez-Valenzuela*, 268 F.3d 719, 724 (9th Cir. 2001), *amended by* 279 F.3d 1062 (9th Cir. 2002).

The scope of the questions asked during a stop may be expanded if the officer "notices particularized, objective factors arousing his suspicion."  *Id*.  The detention may not be prolonged, however, if the officer merely develops an "inchoate and unparticularized suspicion or 'hunch.'"  *Id*.

**II.  Analysis**

Defendant contends Officer Blazer's continued detention and questioning of Defendant impermissibly expanded the scope of the traffic stop and violated Defendant's Fourth Amendment rights.  Even though Officer Blazer's initial stop of Defendant's vehicle may have been reasonable, Defendant contends Officer Blazer did not have reasonable suspicion:  (1) to continue to detain Defendant after determining that he had a valid driver's license and insurance, (2) to question Defendant about matters unrelated to his failure to stop at the stop sign, (3) to ask repeatedly to search the Lexus, (4) to tell Defendant that he believed Defendant had a gun in his vehicle, or (5) to search Defendant.

According to the government, Officer Blazer had reasonable suspicion under the circumstances to investigate the state-law

crime of Attempting to Elude a Police Officer, and, therefore, it was not unreasonable for him to detain Defendant even after he determined the validity of Defendant's driver's license and proof of insurance.

    A.    **Attempting to Elude A Police Officer**

Oregon Revised Statute § 811.540 provides:

> (1)  A person commits the crime of fleeing or attempting to elude a police officer if:
>
> (a)  the person is operating a motor vehicle; and
>
> (b)  a police officer . . . gives a visual or audible signal to bring the vehicle to stop . . . and . . . :
>
> > (A)  the person, while still in the vehicle, knowingly flees or attempts to elude a pursuing police officer. . . .

The government cites a number of Oregon cases to support its contention that Officer Blazer had reasonable suspicion to believe that Defendant was attempting to elude him when Defendant drove for two blocks after Officer Blazer turned on his emergency lights and hit his siren. These cases, however, are distinguishable.

For example, in *Mathre v. Multnomah County*, the plaintiff appealed a directed verdict in favor of the defendant in an action for false arrest. The court held the deputy sheriff had probable cause to arrest the plaintiff for attempting to elude a police officer because the plaintiff continued for eight

9  -    OPINION AND ORDER

blocks at 20 miles per hour and turned into a private driveway after the deputy signaled him to stop. 35 Or. App. 75 (Or. App. 1978).

In *Oregon v. Dumont*, the officers initiated a traffic stop of a vehicle operated by the defendant because they observed a passenger who had an outstanding felony-arrest warrant. 177 Or. App. 650 (Or. App. 2001). After the vehicle stopped, the defendant began to walk away from the officers and the vehicle. The arresting officer told the defendant to stop, but the defendant continued to walk away and ultimately entered a residence. The Oregon Court of Appeals affirmed the trial court's denial of the defendant's motion to suppress, but the appellate court declined to decide whether the stop was constitutional because the defendant had not preserved that issue for appeal. *Id*. at 657.

In addition, the majority of reported Oregon cases that address the issue of attempting to elude involve high-speed chases and evasive maneuvers. *See, e.g., State v. Hendershott*, 131 Or. App. 531 (Or. App. 1994)(motorist ran several stop signs during high-speed chase); *State v. Porter*, 113 Or. App. 326, 328 (Or. App. 1992)(extended high-speed chase); *State v. Snow*, 179 Or. App. 222, 234-35 (Or. App. 2002)(defendant attempted to elude by driving at unlawful speeds, making at least three turns in rapid succession, running a stop sign after the stop was

10 -   OPINION AND ORDER

initiated, and then fleeing the vehicle). In some cases, drivers fled for a short time at lower speeds, but then drove at faster speeds and violated traffic laws. *See, e.g., State v. Clem*, 136 Or. App. 37, 39 (Or. App. 1995)(driver continued for four minutes after officer put on signal, violated a traffic law by missing a stop sign, and swerved on the road).

Here Defendant slowed down and drove for only two blocks after Officer Blazer turned on his emergency lights and hit his siren. Officer Blazer testified Defendant went "between real slow and . . . slow." Defendant did not speed up, veer away from the patrol car, or violate any additional traffic laws. Defendant was cooperative when Officer Blazer stopped the car, and Defendant did not attempt to run or to drive the car away.

Finally, Officer Blazer testified he did not mention to Defendant or to Officer Lewton anything about Defendant attempting to elude at the time of the stop nor did Officer Blazer note in his official report of the encounter any attempt by Defendant to elude him.

Under these circumstances and on this record, the Court concludes Officer Blazer did not have reasonable suspicion to investigate the state-law crime of Attempting to Elude a Police Officer.

    **B.**    **Defendant's Continued Detention**

Officer Blazer's check of Defendant's license and proof

11 -   OPINION AND ORDER

of insurance was permissible under the Fourth Amendment as was Officer Blazer's discussion with Defendant about the reasons for stopping the Lexus and about why Defendant did not stop for two blocks.  *See Chavez-Valenzuela*, 268 F.3d at 724 (citation omitted).  After Officer Blazer established the validity of Defendant's license and proof of insurance, however, "particularized, objective factors arousing his suspicion" must have been present in order to detain Defendant further or to question him about subjects other than the reasons for the stop.

The government contends "particularized, objective factors arousing [Officer Blazer's] suspicion" existed.  Specifically, the government points out that Officer Blazer saw Defendant begin to circle the block at 2:45 a.m. in a high-crime area known for burglaries, car prowls, and drug deals.  In addition, Officer Blazer believed Defendant's statement "Don't shoot me" was an unusual response to being stopped for running a stop sign, Defendant's explanation that he was going to see his girlfriend did not make sense, and Defendant became more animated and adamant as the stop continued and after the officer asked for consent to search the vehicle.

In *Chavez-Valenzuela*, a police officer stopped the defendant and asked him to get out of his car.  268 F.2d at 722.  The officer approached the defendant to check his driver's license and vehicle registration.  *Id*.  The officer noticed the

12 -   OPINION AND ORDER

defendant's hand was shaking severely.  *Id*.  After the officer asked the defendant about his travel plans and where he worked, the defendant's entire body was trembling and he avoided making eye contact with the officer.  *Id*.  The officer determined the defendant's license and registration were valid and that there were not any warrants against the defendant, but the officer continued to question him about drugs in the car and asked for consent to search.  *Id*.  The defendant eventually agreed to the search, and the officers recovered controlled substances.  *Id*.  The Ninth Circuit held the detention of the defendant was unlawful after the officer determined the defendant's license and registration were valid.  *Id*. at 728.  The Ninth Circuit reasoned the defendant's extreme nervousness and failure to maintain eye contact did not support a reasonable suspicion of criminal activity.  *Id*. at 726.  The court, therefore, concluded the detention and questioning of the defendant about drugs exceeded the constraints of the Fourth Amendment.  *Id*. at 728.

Similarly, in *United States v. Jones*, the Eighth Circuit concluded police officers did not have reasonable suspicion of drug trafficking to justify the continued detention of the defendant after the officers determined the defendant's license was valid, the vehicle was properly registered and insured, and there were not any outstanding warrants against the defendant.  269 F.3d 919, 929 (8th Cir. 2001).  The court

13 -   OPINION AND ORDER

reasoned:

> The facts presented in this case - minimal nervousness and an inconsistent answer as to prior arrests - whether viewed alone or in combination, amount to little.  When an officer can cite only one or two facts, including a generic claim of nervousness, as supporting his determination of reasonable suspicion, then we may conclude that his suspicion was not reasonable . . . for it is impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation.

*Id.* (quotation omitted).

Here the government has not established factors that objectively give rise to anything other than an "inchoate and unparticularized suspicion or 'hunch'" by Officer Blazer of criminal activity.  In other words, the totality of the circumstances in this case do not constitute "particularized, objective factors" sufficient to justify Officer Blazer's continued detention of Defendant.

Accordingly, on this record, the Court concludes the detention of Defendant after Officer Blazer determined Defendant's license and insurance were valid and he was not going to cite Defendant for the stop-sign infraction violated Defendant's Fourth Amendment rights.  The Court also concludes the search of Defendant's person and the search of the Lexus violated Defendant's Fourth Amendment rights.  The Court, therefore, grants Defendant's Motion to Suppress.

14 -    OPINION AND ORDER

**CONCLUSION**

For these reasons, the Court **GRANTS** Defendant's Motion to Suppress Physical Evidence (#23).

IT IS SO ORDERED.

DATED this 16th day of October, 2006.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

15 -   OPINION AND ORDER